a breach of warranty as to goods paid for, but not included in the goods referred to in the complaint. The original counterclaim was limited to the breach of warranty on the sale of the goods involved in the action. Plaintiff returned the answer to the supplemental complaint, on the ground that no leave to serve an amended answer had been granted. In doing so the plaintiff was clearly right. When a supplemental complaint is served, the only matter proper to be put in issue is the new matter alleged in the supplemental complaint. It was unnecessary and improper for the plaintiff to reallege the sale and delivery in the supplemental complaint. But the mere fact that the plaintiff included superfluous allegations in the supplemental complaint did not require the defendants to answer them. They were already in issue, and as to them the original answer stood. Much less did the inclusion of these superfluous allegations justify the defendants in serving a new answer materially changing the issues in the action.

The order appealed from should be reversed, but, owing to the faulty form of the supplemental complaint, without costs, and motion denied. All concur.

---

(91 Misc. Rep. 335)

POTOMAC INS. CO. OF DISTRICT OF COLUMBIA v. KELLY.

(Supreme Court, Special Term, New York County. July, 1915.)

1. CORPORATIONS ⬤⫘318—AGENTS OF INSURANCE COMPANY—PERSONAL PROFITS.

Where a party occupying a direct fiduciary relation to an insurance company occupies a like relation to a majority stockholder, another corporation, he is precluded from making any personal profit by concealing his knowledge from the insurance company, or by not carrying out arrangements made by him with such stockholder for the company's benefit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1363, 1364; Dec. Dig. ⬤⫘318.]

2. PRINCIPAL AND AGENT ⬤⫘78—SECRET PROFITS—ACCOUNTING.

Where a party made a personal profit by concealing his knowledge from his principal, an insurance company, the principal was entitled to an accounting.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 162–177; Dec. Dig. ⬤⫘78.]

Action by the Potomac Insurance Company of the District of Columbia against John A. Kelly for an accounting. Judgment according to opinion.

Beekman, Menken & Griscom, of New York City, for plaintiff.
Cardozo & Nathan, of New York City, for defendant.

GUY, J. [1, 2] This is an action by an insurance company against its general agent and former president, vice president, and director for an accounting. On January 12, 1909, defendant became plaintiff's general agent for the term of five years at a commission of 37½ per cent. of the net premiums written through his office, as well as the expenses of the agency. On February 9, 1909, defendant, then plaintiff's majority stockholder, was elected a director; in September, 1911,

he was elected its president; in 1912 he was elected its vice president, and he acted as director and vice president until May 23, 1913. Early in 1911 defendant, who owned a majority of the stock of the plaintiff company, sold 53 per cent. of said stock to the General Accident, Fire & Life Assurance Corporation, Limited, a Scotch insurance company, and later he sold it, or purchased for it, further shares, aggregating in all a little over 90 per cent. of plaintiff's stock, for £50,000, mostly at $37.50 a share, of which £6,812 was deducted for the purchase price of 2,250 shares of General Accident stock, which defendant purchased with a view of becoming one of the General Accident Corporation's American joint managers. On May 1, 1911, defendant accepted a written agreement in the form of a letter from the general manager of the General Accident Corporation, then the plaintiff's majority stockholder, whereby the defendant agreed to reduce his commissions from 37½ per cent. to 35 per cent. upon the net premiums, with a further and contingent commission of 10 per cent. upon the net ascertained profits, and wherein defendant also agreed to pay all the expenses of the business or agency, including taxes and any other special charge, out of his 35 per cent., instead of the plaintiff paying them, as provided by the contract of 1909. In 1912 defendant became one of the two joint managers in the United States for the General Accident Corporation.

The weight of the evidence is that defendant's election as plaintiff's president and vice president, as well as his continuance as a director after he sold his majority interest in its stock, was the result of his fiduciary relation as joint United States manager of its majority stockholder, the General Accident Corporation. Defendant at no time during his directorship notified plaintiff of his agreement with the General Accident Corporation to pay the expenses of his agency, as well as to reduce his commission, and plaintiff paid the expenses of his agency until May 23, 1913. At the time of the agreement for the reduction of defendant's commissions, and that he should thereafter personally pay the expenses of his agency, defendant, instead of dealing with the plaintiff at arm's length, occupied a double fiduciary relation, each of which separately made him at least a quasi trustee, and precluded him from concealing anything from the plaintiff, or from securing any personal or secret advantage to himself by reason of the plaintiff's ignorance of the arrangement between himself and his chief cestui que trust for his personal payment of the agency charges. As a director of plaintiff, and later also as its president and vice president, elected to both of the two latter offices by the voting of the stock then belonging to the General Accident Corporation, defendant at all times occupied a direct fiduciary relation to the plaintiff, which precluded him from making any personal profit by concealing his knowledge from or by not carrying out his arrangements made for the plaintiff's benefit. McGourkey v. Toledo & Ohio C. R. Co., 146 U. S. 536, 565–567, 13 Sup. Ct. 170, 36 L. Ed. 1079; Thomas v. Brownville, F. K. & P. R. R. Co., 109 U. S. 522, 524–526, 3 Sup. Ct. 315, 27 L. Ed. 1018; Wardell v. R. R. Co., 103 U. S. 651, 657–659, 26 L. Ed. 509; Jacobson v. Brooklyn Lumber Co., 184 N. Y. 152, 161, 76 N. E. 1075;

Sage v. Culver, 147 N. Y. 241, 247, 41 N. E. 513; Munson v. Syracuse, G. & C. R. R. Co., 103 N. Y. 58, 73–75, 8 N. E. 355; Duncomb v. N. Y., H. & N. R. R. Co., 84 N. Y. 190, 198, 199; Barnes v. Brown, 80 N. Y. 528, 535. As the General Accident Corporation's only resident United States manager, both before and after the written contract appointing him such joint manager, defendant became and at all times occupied a direct fiduciary relation to the General Accident Corporation to protect its interests as majority stockholder in the plaintiff, which precluded him from making any personal profit by concealing his knowledge from plaintiff or by not carrying out his arrangements with his cestui que trust for plaintiff's benefit. Marvin v. Brooks, 94 N. Y. 71, 75, 76; Isham v. Post, 141 N. Y. 100, 104–106, 35 N. E. 1084, 23 L. R. A. 90, 38 Am. St. Rep. 766; General Rubber Co. v. Benedict, 215 N. Y. 18, 21, 26, 109 N. E. 96.

Defendant claims a breach by the General Accident Corporation of its alleged verbal agreement to give plaintiff $200,000 or more further capital. The documentary evidence, however, shows that while all parties realized that the plaintiff's capital was inadequate, and the General Accident Corporation contemplated increasing it by issuing new shares of stock, they also contemplated purchasing the whole of the plaintiff's outstanding stock before increasing its capital. They were unable to purchase more than a little over 90 per cent. of its outstanding stock, and therefore did not see their way clear, and, were not obligated, to issue any new stock. The correspondence on this subject indicates that, whatever the original conversations may have been, the final understanding was that the issue or nonissue of further stock, or the contribution of further funds, was at the option of the General Accident Corporation. Plaintiff's claim that it was damaged by defendant not furnishing certain information called "bordereaus," as he had agreed to do, also because he did not keep up a larger field force to increase the business, is refuted partly by plaintiff's acquiescence in the custom of the business as carried on by defendant as its general agent for over two years, as well as by the obvious inadequacy of its capital and surplus for doing any more business than it was doing.

The plaintiff is entitled to judgment directing that defendant shall, within 20 days from the service of the interlocutory judgment, file and serve a verified account showing the amount of commissions he received or retained, as well as of all agency or other expenses of the business he paid, retained, or collected from plaintiff or otherwise from May 1, 1911, until the termination of his general agency. If plaintiff files and serves objections to said account within 20 days thereafter, the issues raised by said account and objections will be referred; otherwise, final judgment will be entered upon said account. All questions of costs reserved until the entry of final judgment.

Judgment accordingly.